1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  CORYEL L. ADAMS,

11              Plaintiff,

12        v.

13  NANCY A. BERRYHILL, Acting
    Commissioner of Social Security
14  Administration,[1]

15              Defendant.

CASE NO. 2:16-CV-00917-DWC

ORDER ON PLAINTIFF'S
COMPLAINT

16

17

18

19

20

21

     Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

denial of Plaintiff's applications for Supplemental Security Income ("SSI) benefits. The parties

have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed.

R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a

United States Magistrate Judge, Dkt. 6.

22

23

24

    [1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting
Commissioner of Social Security. Fed. R. Civ. P. 25(d).

1    After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

2    erred by failing to properly evaluate the opinions of two examining psychologists, as well as by

3    improperly discounting Plaintiff's subjective symptom testimony. Therefore, this matter is

4    reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

5                    **PROCEDURAL& FACTUAL HISTORY**

6    On October 11, 2013, Plaintiff filed an application for SSI. *See* Dkt. 11, Administrative

7    Record ("AR") 133-41. Plaintiff alleges he became disabled on March 1, 2012, due to

8    posttraumatic stress disorder ("PTSD"), high blood pressure, and back and shoulder pain. *See*

9    AR 133, 152.  Plaintiff's application was denied upon initial administrative review and on

10   reconsideration. *See* AR 46, 60. A hearing was held before an ALJ on November 18, 2014, at

11   which Plaintiff, represented by counsel, appeared and testified. *See* AR 26.

12   On January 29, 2015, the ALJ found Plaintiff was not disabled within the meaning of

13   Sections 1614(a)(3)(A) of the Social Security Act. AR 19. Plaintiff's request for review of the

14   ALJ's decision was denied by the Appeals Council on April 11, 2016, making that decision the

15   final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20

16   C.F.R. § 404.981, § 416.1481. On June 15, 2016, Plaintiff filed a complaint in this Court seeking

17   judicial review of the Commissioner's final decision.

18   Plaintiff argues the denial of benefits should be reversed and remanded for further

19   proceedings, because the ALJ erred by: 1) improperly discounting the opinions of two examining

20   psychologists; and 2) improperly discounting Plaintiff's subjective symptom testimony Dkt. 15

21   pp. 1-2.

22

23

24

1

**STANDARD OF REVIEW**

2     Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3 security benefits only if the ALJ's findings are based on legal error or not supported by

4 substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5 Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

6 more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

7 mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

8 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

9

**DISCUSSION**

10   I.     Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

11       **A.  Standard**

12     The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

13 opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

14 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

15 *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

16 examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

17 set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

18 *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). The ALJ

19 can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

20 clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

21 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must

22 explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*,

23 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22). The ALJ "may not reject 'significant

24

ORDER ON PLAINTIFF'S COMPLAINT - 3

1   probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

2   (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642

3   F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for

4   disregarding [such] evidence." *Flores*, 49 F.3d at 571.

5         **B. Application of Standard**

6            1. *Victoria McDuffee, Ph.D.*

7       Dr. McDuffee examined Plaintiff on November 25, 2013. AR 324. During her interview,

8   Plaintiff related a history of multiple felony convictions and aggressive behavior. AR 325. On

9   examination, Plaintiff presented with marginal hygiene and grooming, as well as restless, fidgety

10   and retarded psychomotor activity. AR 327.  Plaintiff demonstrated: irritable, hostile mood;

11   labile affect; argumentative, hostile, aggressive, irritable attitude and behavior; and a low

12   frustration tolerance and persecutory ideation. AR 328. Dr. McDuffee documented impaired

13   thought process and content, memory, and poor insight and judgment. AR 328. Specifically,

14   Dr.McDuffee noted Plaintiff ruminated, engaged in suspicious and persecutory ideation, and

15   responds to violent impulses. AR 328. Dr. McDuffee diagnosed Plaintiff with mood disorder,

16   NOS, and Antisocial Personality Disorder with paranoid traits. AR 326. Dr. McDuffee also

17   considered whether Plaintiff had PTSD, but ultimately discounted that diagnosis due to

18   Plaintiff's presentation on examination. AR 327.

19       As a result of Plaintiff's impairments, Dr. McDuffee concluded Plaintiff would have

20   numerous limitations, including severe limitations in his ability to: perform activities within a

21   schedule, maintain regular attendance, and be punctual within customary tolerances without

22   special supervision; make simple work-related decisions; communicate and perform effectively

23   in a work setting; and maintain appropriate behavior in a work setting. AR 326-27. Dr.

24

1   McDuffee also opined Plaintiff would have marked limitations in his ability to: perform routine

2   tasks without special supervision; adapt to changes in a routine work setting; complete a normal

3   work day and work week without interruptions from psychologically based symptoms; and set

4   realistic goals and plan independently. AR 326-27.

5          The ALJ gave great weight to Dr. McDuffee's opinion Plaintiff did not have PTSD. AR

6   16. However, the ALJ gave no weight to Dr. McDuffee's opinion Plaintiff had marked or severe

7   limitations for the following reason:

> The only Axis I diagnosis found by Dr. McDuffee is a mood disorder, not
> otherwise specified [AR 326]. She also reports that the claimant has cognitive
> limitations such as slow processing speed that would limit his employability. Yet,
> she does not diagnose a cognitive [dis]order or perform psychological testing of
> the claimant's cognitive functioning [AR 326]. Dr. McDuffee further reports that
> the claimant has paranoia and panic attacks. Yet, these are also not part of her
> Axis I diagnosis [AR 325-26]. Accordingly, I discount Dr. McDuffee's report of
> more extreme limitations. These tend to be matters that reflect the claimant's
> conduct or attitude, rather than reflect a diagnosed mental impairment and its
> effects.

AR 16.

       An ALJ is not a medical professional. *Nguyen v. Chater,* 172 F.3d 31, 35 (9th Cir. 1999).

*See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law

judges of the Social Security Administration, must be careful not to succumb to the temptation to

play doctor. The medical expertise of the Social Security Administration is reflected in

regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead;

lay intuitions about medical phenomena are often wrong"). While the ALJ has the duty to resolve

conflicts in the medical evidence, the ALJ may not do so through speculation, or by substituting

his opinion for that of a doctor. *See Nguyen*, 172 F.3d at 35. *See also* Social Security Ruling

("SSR") 86-8, *available at* 1986 WL 68636.  Here, however, the ALJ did exactly that. The ALJ

assumes, without citation to other medical evidence of record, that cognitive limitations cannot

be caused by mood disorder. *See, e.g.*, *Major Depressive Episode*, Diagnostic and Statistical

Manual of Mental Disorders ("DSM") IV-TR, 350 (4th ed. 2000) (noting individuals in a major

depressive episode may have impairments in their "ability to think, concentrate, or make

decisions" and noting "they may appear easily distracted or complain of memory difficulties.").

The ALJ also assumes Plaintiff's paranoia and panic attacks cannot be caused by depression.

Notably, the ALJ does so by entirely disregarding Dr. McDuffee's Axis II[2] diagnosis of

antisocial personality disorder *with paranoid traits*. Similarly, the ALJ's assumption that Dr.

McDuffee's opined limitations "reflect the claimant's conduct or attitude, rather than reflect a

diagnosed mental impairment and its effects," was made without reference to any medical

evidence, and again in apparent disregard of Dr. McDuffee's diagnosis of antisocial personality

disorder. As Plaintiff correctly notes, "[w]hile an administrative law judge is free to resolve

issues of credibility as to lay testimony or to choose between properly submitted medical

opinions, [he] is not free to set [his] own expertise against that of a physician who testified

before [him]." *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978). Because the ALJ's reason

---

[2] The DSM-IV-TR provides for a five-axis diagnostic method. *See Multiaxial Assessment*, DSM-IV-TR, 27 (4th ed. 2000). While most clinical disorders are categorized on Axis I, the DSM-IV-TR separately categorizes personality disorders and mental retardation under Axis II. *Id.* at 28. However, "[t]he coding of Personality Disorders on Axis II should not be taken to imply that their pathogenesis or range of appropriate treatment is fundamentally different from that for the disorders coded on Axis I." *Id. See also Id.* at 29 ("the multiaxial distinction among Axis I, Axis II, and Axis III disorders does not imply that there are fundamental differences in their conceptualization, that mental disorders are unrelated to physical or biological factors or processes, or that general medical conditions are unrelated to behavioral or psychosocial factors or processes."). It is notable that the distinction between Axis I and II disorders was eliminated entirely from the Fifth Edition of the DSM. *See Introduction*, DSM-V (5th ed. 2014)("DSM-5 has moved to a nonaxial documentation of diagnosis (formerly Axes I, II, and III), with separate notations for important psychosocial and contextual factors (formerly Axis IV) and disability (formerly Axis V)").

1  for discounting Dr. McDuffee's opinion is predicated entirely on this impermissible substitution

2  of his own opinion for that of the doctor, the ALJ erred.

3        Further, the ALJ's error is not harmless. Dr. McDuffee opined to numerous marked and

4  severe limitations not accounted for in the residual functional capacity ("RFC"). *See* AR 14. For

5  example, while the RFC finding reflects Plaintiff "could respond appropriately to supervision"

6  and "tolerate occasional changes in the work environment," Dr. McDuffee opined Plaintiff

7  would have marked and/or severe limitations in his ability to: maintain appropriate behavior in a

8  work setting; communicative and perform effectively in a work setting; adapt to changes in a

9  routine work setting; and perform routine tasks without special supervision. AR 14, 326-27. As

10  the RFC finding fails to account for Dr. McDuffee's opined limitations and as the ALJ failed to

11  provide legally sufficient reasons, supported by substantial evidence, for discounting Dr.

12  McDuffee's opinion, the ALJ's error is not "inconsequential to the ultimate nondisability

13  determination," and requires remand to correct. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th

14  Cir. 2012).

15                    2. *James Czysz, Ph.D.*

16        Dr. Czysz examined Plaintiff on March 26, 2014. AR 407. On examination, Dr. Czysz

17  observed Plaintiff had a downcast, withdrawn appearance. AR 410. Dr. Czysz noted Plaintiff

18  demonstrated psychomotor slowing, flat tone, and little spontaneous elaboration on examination,

19  noted Plaintiff scored in the "severely depressed" and "severely anxious" range on the Beck

20  Depression Inventory ("BDI") and Beck Anxiety Inventory ("BAI"), respectively, and noted

21  Plaintiff demonstrated many symptoms of PTSD. AR 410. Plaintiff's thought process and

22  content, memory, and judgment were outside normal limits. AR 411. Dr. Czysz diagnosed

23  Plaintiff with Mood Disorder, NOS, PTSD, and Personality disorder, NOS with antisocial

24

features. AR 408. As a result of these impairments, Dr. Czysz opined Plaintiff would be

markedly limited in his ability to: perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances without special supervision; adapt to

changes in a routine work setting; communicate and perform effectively in a work setting;

complete a normal work day and work week without interruptions from psychologically based

symptoms; and set realistic goals and plan independently. AR 409. Dr. Czysz also opined

Plaintiff would have moderate limitations in his ability to: understand, remember, and persist in

tasks by following detailed instructions; learn new tasks; make simple work-related decisions; be

aware of normal hazards and take appropriate precautions; and maintain appropriate behavior in

a work setting. AR 409.

The ALJ gave Dr. Czysz's opinion little weight for three reasons.

[1] Like Dr. McDuffee, Dr. Czysz reports that the claimant has a mood disorder, not otherwise specified. To this, he adds posttraumatic stress disorder [AR 408]. For the reasons stated above by Dr. McDuffee, that diagnosis is suspect. [2] Most of the limitations cited by Dr. Czysz come from the claimant's self report. Dr. Czysz performed a mental status examination, but little in the way of objective psychological testing. His conclusions reflect the claimant's subjective perceptions of his condition and are given little weight. [3] Another examiner sums up the claimant's presentation by noting that he "is not working and want[s] to get SSI." He mainly sought assistance with medication, housing, and vocational rehabilitation, in addition to SSI [AR 348].

AR 16-17. Plaintiff argues these were not specific and legitimate reasons, supported by

substantial evidence, for discounting Dr. Czysz's opinion.

First, the ALJ discounted Dr. Czysz's diagnosis of PTSD by reference to contradictory

conclusions made by Dr. McDuffee. However, both Dr. Czysz and Dr. McDuffee based their

opinions on independent clinical findings. Specifically, while Dr. McDuffee did not observe any

evidence of PTSD, Dr. Czysz explicitly indicated he observed PTSD symptoms during his

examination. AR 410.  Rather than being unsupported by the record, Dr. Czysz underpinned his

1  diagnosis with substantial evidence. *See Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). *See*

2  *also Ryan v. Commissioner of Social Sec. Admin*, 528 F.3d 1194, 1200 9th Cir. 2008) ("Nothing

3  in [one examining doctor's report] rules out [another examining doctor's] more extensive

4  findings") (*quoting Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299

5  (9th Cir. 1999)).

6          It is axiomatic that the ALJ has the duty to resolve conflicts and ambiguities in the

7  medical opinion evidence. *Reddick*, 157 F.3d at 722. But here, the ALJ did not actually perform

8  this function. The ALJ *identified* a conflict between Dr. McDuffee and Dr. Czysz' opinions, but

9  failed to actually articulate any reasoning as to how he *resolved* the conflict. Merely noting a

10  different doctor made a different diagnosis based on different diagnostic results fails to

11  demonstrate Dr. Czysz's PTSD diagnosis is somehow less worthy than that of Dr. McDuffee's

12  contrary conclusion. This is particularly true in this case, given that, as discussed in Section

13  I(B)(1), above, the ALJ had previously discounted most of Dr. McDuffee's opinion by

14  (erroneously) critiquing the relationship between her diagnoses and opined limitations. The ALJ

15  was required to do more than identify a conflict between medical opinions; the ALJ needed to

16  articulate a specific and legitimate reason for giving Dr. Czysz's opinion less weight.

17          Second, the ALJ concluded Dr. Czysz's opinions were based primarily on Plaintiff's

18  subjective reports, which the ALJ found to be not fully credible. An ALJ may discount a

19  physician's opinion where the opinion is based to a large extent on a claimant's self-reports, and

20  the ALJ has properly discounted a claimant's subjective symptom testimony. *Tommasetti v.*

21  *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, "when an opinion is not more heavily

22  based on a patient's self-reports than on clinical observations, there is no evidentiary basis for

23  rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, Dr. Czysz

24

did more than recapitulate Plaintiff's self reports; Dr. Czysz performed a clinical interview and mental status examination, which documented abnormal findings in Plaintiff's thought process, memory, and judgment, as well as flat tone, downcast appearance, and observable symptoms of PTSD. AR 410-11. Dr. Czysz also conducted several inventories, including the BDI, BAI, and the REY 15 item test to determine symptom validity. Importantly, Dr. Czysz noted Plaintiff's performance on the REY 15 suggested "good effort and lack of dissimulation." AR 411. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"). On this record, the ALJ's conclusion Dr. Czysz's opinion was based largely on Plaintiff's subjective complaints is unsupported by substantial evidence.

Finally, the ALJ concluded Dr. Czysz's opinion should be given little weight, as another medical examiner in the record noted Plaintiff was seeking SSI. This reasoning is problematic in a number of ways. For one, the very purpose of applying for Social Security benefits is the receipt of pecuniary gain; without other evidence of exaggeration or malingering, the suggestion of secondary gain is not a legally sufficient reason to discount an examining physician.[3] *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *Ratto v. Secretary*, 839 F.Supp. 1415, 1428-29 (D. Or. 1993); *Kish v. Colvin*, 552 Fed.Appx. 650, 651 (9th Cir. 2014)). *See also Lester*, 81 F.3d at 831 (the fact examining psychologist's report was "clearly obtained by the claimant's

---

[3] Defendant argues there is evidence of exaggeration which could support such a finding. Specifically, Defendant cites to a sentence from the opinion of a nonexamining psychological consultant, who indicated Plaintiff may be exaggerating his complaints. AR 68. Notably, the ALJ does not refer to this aspect of the nonexamining psychological consultant's opinion at all in the written decision.

1  attorney for the purpose of litigation" does not provide a legitimate basis for rejecting the

2  medical opinion, absent actual evidence of impropriety). Further, the medical record cited by the

3  ALJ documents more than Plaintiff's expressed interest in pursuing SSI benefits.  For instance,

4  the clinical intake form cited by the ALJ reflects Plaintiff was referred to psychological services

5  by his primary care physician, and notes Plaintiff's history of childhood abuse, prison sentences,

6  depression, and "PTSD like anxiety." AR 348. In any event, the ALJ does not actually articulate

7  "secondary gain" as the reason he is discounting Dr. Czysz's opinion, nor does the ALJ

8  meaningfully explain why the evidence he cites actually contradicts Dr. Czysz's opinion. In

9  short, the ALJ failed to articulate this reasoning with sufficient specificity to constitute a

10  "specific and legitimate reason" for discounting Dr. Czysz's opinion.

11         As the ALJ failed to articulate a specific and legitimate reason, supported by substantial

12  evidence, for discounting Dr. Czysz's opinion, the ALJ erred.  The ALJ should reevaluate Dr.

13  Czysz's opinion on remand.

14     II.    Whether the ALJ Provided Specific, Clear, and Convincing Reasons, Supported by
               Substantial Evidence, for Discounting Plaintiff's Subjective Symptom Testimony.

15

16         If an ALJ finds a claimant has a medically determinable impairment which reasonably

    could be expected to cause the claimant's symptoms, and there is no evidence of malingering, the

17  ALJ may reject the claimant's testimony only "by offering specific, clear and convincing

18  reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (*citing Dodrill v. Shalala*, 12

19  F.3d 915, 918 (9th Cir.1993)). *See also Reddick*, 157 F.3d at 722. However, sole responsibility

20  for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

21  *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7

22  (9th Cir. 1971); *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). Where more than one

23  rational interpretation concerning a plaintiff's testimony can be drawn from substantial evidence

24

1   in the record, a district court may not second-guess the ALJ's credibility determinations. *Fair*,

2   885 F.2d at 604. *See also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

3   evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

4   decision, the ALJ's conclusion must be upheld."). In addition, the Court may not reverse a

5   credibility determination where that determination is based on contradictory or ambiguous

6   evidence. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That some of the reasons for

7   discrediting a claimant's testimony should properly be discounted does not render the ALJ's

8   determination invalid, as long as that determination is supported by substantial evidence.

9   *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

10          Here, the ALJ discounted Plaintiff's subjective testimony for two reasons. First, the ALJ

11   concluded Plaintiff's activities of daily living constitute evidence Plaintiff was exaggerating his

12   symptoms. AR 15. Specifically, the ALJ concludes Plaintiff's testimony that he experiences pain

13   when standing, walking, and laying down is inconsistent with his ability to prepare daily meals,

14   wash dishes, and iron clothes. AR 15, 162-63. The ALJ also concludes Plaintiff's claim of

15   cognitive impairments is contradicted by his ability to manage his finances and maintain a

16   checking and savings account, as well as his ability to engage in his hobby of drawing. AR 15,

17   164-65.

18          The Ninth Circuit has stated ALJ's should be especially cautious in finding a claimant's

19   activities of daily living contradict claims of disabling limitations, "because impairments that

20   would unquestionably preclude work and all the pressures of a workplace environment will often

21   be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d

22   995, 1016 (9th Cir. 2014). To base an adverse evaluation of a claimant's testimony on the

23   claimant's activities of daily living, the ALJ must either explain how the claimant's activities are

24

1  inconsistent with his or her testimony, or must explain how the activities of daily living meet

2  "the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

3  Here, however, the ALJ fails to explain *how* Plaintiff's activities are actually inconsistent with

4  this testimony. Notably, Plaintiff does not indicate he is able to conduct these activities without

5  pain, nor does he describe his ability to perform these activities in a manner inconsistent with his

6  described impairments. *Compare* AR 162 (describing need to constantly change positions, and

7  difficulty putting on certain types of clothing) *with* AR 163-65 (stating Plaintiff prepares food

8  daily, sweeps, washes dishes, irons, and engages in his art hobby, without describing time frames

9  for completion). It is not self evident from these activities that they would be inconsistent with

10  Plaintiff's stated limitations, nor is such a conclusion clear from the sections of Plaintiff's

11  function report cited by the ALJ. Thus, on this record, the ALJ's reason is neither clear nor

12  convincing, nor supported by substantial evidence.

13       Second, the ALJ concluded Plaintiff's work history "may show lack of motivation for

14  working." AR 15. A poor work history may constitute a valid basis for discounting a claimant's

15  subjective symptom testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

16  However, even assuming this is a valid reason to discount Plaintiff's testimony in this case, it

17  would be the *only* valid reason. It is not clear from the record as a whole that the ALJ's errors

18  would be outweighed by this one potentially valid reason. *See Duran v. Astrue*, 2011 WL

19  3563713, at *8-9 (W.D. Wash. July 25, 2011), *report and recommendation adopted*, 2011 WL

20  3563499 (W.D. Wash., Aug. 12, 2011) (*citing Tonapetyan*, 242 F.3d at 1148). Further, as

21  discussed above, the ALJ erred in discounting the medical opinions from Dr. McDuffee and Dr.

22  Czysz, and an evaluation of a claimant's testimony relies, in part, on an accurate assessment of

23  the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Thus, the ALJ's evaluation of

24

1  Plaintiff's testimony is unsupported by substantial evidence in the record as a whole, and, on

2  remand, the ALJ should reevaluate Plaintiff's testimony.

3  III.    Whether the Case Should be Remanded for an Award of Benefits or Further
        Proceedings.

4       Plaintiff argues the case should be reversed and remanded for the award of benefits,

5  rather than for further proceedings.

6       Generally, when the Social Security Administration does not determine a claimant's

7  application properly, "the proper course, except in rare circumstances, is to remand to the agency

8  for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir.

9  2004) (citations omitted). However, the Ninth Circuit has established a "test for determining

10  when [improperly rejected] evidence should be credited and an immediate award of benefits

11  directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen*, 80 F.3d at

12  1292. This test, often referred to as the "credit-as-true" rule, allows a court to direct an

13  immediate award of benefits when:

14
15       (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
        evidence, (2) there are no outstanding issues that must be resolved before a
        determination of disability can be made, and (3) it is clear from the record that the
16       ALJ would be required to find the claimant disabled were such evidence credited.

17  *Harman,* 211 F.3d at 1178 (*quoting Smolen*, 80 F.3d at 1292). *See also Treichler v.*

18  *Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014), *Varney v. Sec'y of*

19  *Health & Human Servs.*, 859 F.2d 1396 (9th Cir. 1988). Further, even if the ALJ's errors satisfy

20  the three elements of the test articulated in *Harman* and *Smolen*, such errors are relevant only to

21  the extent they impact the underlying question of Plaintiff's disability. *Strauss v. Commissioner*

22  *of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to

23  benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the

24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1    ALJ's errors may be." *Id.* (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir.

2    2005)). Therefore, even if the credit-as-true conditions are satisfied, a court should nonetheless

3    remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant

4    is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (*citing Connett v. Barnhart*, 340 F.3d 871, 876

5    (9th Cir. 2004)).

6         Here, outstanding issues must be resolved. For example, Dr. McDuffee and Dr. Czysz's

7    opinions conflict with the less restrictive opinions rendered by state agency medical consultant

8    Dr. Gilbert. AR 68. Thus, it is not clear from the record that the ALJ would be required to find

9    Plaintiff disabled, and the case should be remanded for additional proceedings.

10                                       **<u>CONCLUSION</u>**

11        Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly

12   evaluate Dr. McDuffee and Dr. Czysz's opinions, as well as Plaintiff's subjective symptom

13   testimony. Therefore, the Court orders this matter be reversed and remanded pursuant to

14   sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinion

15   evidence, reevaluate Plaintiff's subjective symptom testimony, re-evaluate Plaintiff's RFC for

16   the period beginning June 14, 2010 through February 25, 2012, and proceed on to Step Four

17   and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the

18   record as needed. Judgment should be for Plaintiff and the case should be closed.

19        Dated this 15th day of March, 2017.

20

21   David W. Christel
     United States Magistrate Judge
22

23

24